THORN CONSTRUCTION CO., INC. a Corporation,
and MASSACHUSETTS BONDING & INSUR-
ANCE CO., a Corporation, Appellants, *v.*
INTERNATIONAL HOD CARRIERS, BUILDING
AND COMMON LABORERS UNION, LOCAL NO.
872, et al., Respondents.

No. 4189

October 23, 1959                    345 P.2d 231

*Robert Callister,* of Las Vegas, and *Louis H. Callister,*
of Salt Lake City, Utah, for Appellants.

*John W. Bonner,* of Las Vegas, for Respondents.

## OPINION

By the Court, McNAMEE, C. J.:

In this action the individual respondents and the respondent unions on their behalf sued appellants for certain claimed wages. From a judgment in favor of respondents this appeal is taken. Hereinafter the appellants will be referred to as Thorn Company, and the respondents as Union.

Thorn Company of Utah in the fall of 1954 was awarded a contract by the State of Nevada to do certain road construction work near Mesquite, Clark County, Nevada. Before its bid was submitted, the Thorn Company investigated the wage rules in effect and in part based its bid on such rates.

At this time three employer associations of Clark County were parties to a Master Labor Agreement with the Building and Construction Trade Unions. This Master Labor Agreement became effective July 10, 1948 and by its terms was to continue until June 1, 1954 and thereafter if not terminated and if renewed as therein provided. It was renewed periodically by supplemental agreements known as Resolutions to Continue, which confirmed the original Master Labor Agreement except for some changes usually as to wage rates. The said Master Agreement and Resolutions were binding on the members of the employer associations as well as upon members of the signatory unions.

On January 31, 1955, in a letter agreement between Thorn Company and one of the signatory unions, Thorn Company agreed to "be bound with the terms and conditions" of the Master Labor Agreement.

On August 24, 1955, when Thorn Company's road construction job was almost completed, the signatory parties to the Master Labor Agreement, after deliberating from the first day of June 1955 adopted a new Resolution to Continue which provided for wage increases retroactive to June 27, 1955. Because of Thorn Company's refusal to pay these wage increases, this action was instituted.

The only question we need consider on this appeal is whether the Thorn Company is bound by the terms of the August 24 Resolution to Continue.

When Thorn Company agreed to be bound by the terms and conditions of the Master Labor Agreement as aforesaid, the Agreement comprised the original Master Labor Agreement and several Resolutions to Continue, the last one being the Resolution of September 7, 1954, which was to continue until June 1, 1955.

The Master Labor Agreement contained provisions for renewal or modifications thereof upon notice. Section XVI relating to notice provides as follows:

"Except as otherwise provided in this Agreement, notices permitted or required to be served on the contractors * * * under the terms of this Agreement, shall be deemed to be sufficiently served upon each and every contractor * * * for all purposes when, (1) Mailed postage prepaid, registered mail, return receipt requested; or (2) Telegraphed (personal delivery), to the Southern Nevada Chapter of the Associated General Contractors * * *."

This section was complied with before the Union commenced the negotiations which resulted in the August 24, 1955 Resolution to Continue.

Thorn Company concedes that when it agreed to be bound by the terms and conditions of the Master Labor Agreement, "it adopted all its terms and conditions," and yet it argues that it did not receive notice for the reason that it had not at any time made the Southern Nevada Chapter of the Associated General Contractors its agent to receive notices on its behalf. It is impossible for us to follow this line of reasoning.

If the contract had prescribed posting or publication as the method for giving notice, agency obviously would not be involved. The fact that the contract provided for delivery of notice to a specified person does not alter the situation.

When Thorn Company adopted all the terms and conditions of the Master Labor Agreement, it became bound by said Section XVI. It could have required personal notice at the time of adopting said Master Agreement. In the absence of such requirement and upon compliance by the Union with the method of giving notice as prescribed by the contract, Thorn Company assumed the risk of receipt thereof. See Schott v. Continental Auto Ins. Underwriters, 326 Mo. 92, 31 S.W.2d 7; Wolonter v. U. S. Casualty Co., 126 Va. 156, 101 S.E. 58; Sasmor v. V. Vivaudou, Inc., 200 Misc. 1020, 103 N.Y.S.2d 640; 39 Am.Jur., Notice and Notices, sec. 11. It knew at the time of its adoption of the Master Agreement that Resolutions to Continue had been entered into periodically subsequent to the execution of the original Master Agreement, and it knew also that the September 7, 1954 Resolution to Continue would expire on June 1, 1955. Furthermore it knew that changes in wages contained in any subsequent Resolutions to Continue which might be adopted as a result of negotiations held after notice would by the terms of the original Master Agreement become part thereof. The giving of notice by the method prescribed in the Master Agreement and Thorn Company's omission to make inquiry as to notice precludes it from thereafter asserting that it had no knowledge of the notice, or that it was not bound by the new wage scale.

Affirmed.

BADT and PIKE, JJ., concur.